```
          IN THE UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF ARKANSAS
                    WESTERN DIVISION
```

CHARLES R. TACKETT                                          Plaintiff

v.                           4:05CV00707 SWW/HLJ

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration,                                    Defendant

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

### INSTRUCTIONS

This recommended disposition has been submitted to United States District Judge Susan Webber Wright. The parties may file specific written objections to these findings and recommendations and must provide the factual or legal basis for each objection. An original and two copies of the objections must be filed with the Clerk no later than five (5) days from the date of the findings and recommendations. A copy must be served on the opposing party. The District Judge, even in the absence of objections, may reject these proposed findings and recommendations in whole or in part.

### DISPOSITION

Plaintiff, Charles R. Tackett, has appealed the final decision of the Commissioner of the Social Security Administration to deny his claim for Disability Insurance benefits and Supplemental Security Income, based on disability. Both parties have submitted appeal briefs and the case is ready for decision.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error. Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997); see also, 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Reynolds v. Chater, 82 F.3d 254, 257 (8th Cir. 1996).

In assessing the substantiality of the evidence, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision. Sultan v. Barnhart, 368 F.3d 857, 863 (8th Cir. 2004); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Plaintiff alleged disability based on his artificial leg, his

left leg, chest pain, back pain, shortness of breath and dizziness. (Tr. 58)  The Commissioner found that he was not disabled within the meaning of the Social Security Act.  The only issue before this Court is whether the Commissioner's decision that Plaintiff was not disabled within the meaning of the Act is supported by substantial record evidence.

After conducting an administrative hearing, the Administrative Law Judge[1] (ALJ) concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act at any time through June 22, 2004, the date of his decision.  (Tr. 20)  On March 11, 2005, after receiving and considering additional evidence, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, making it the final decision of the Commissioner.  (Tr. 3-5)  Plaintiff then filed his complaint initiating this appeal.  (Docket #3)

After consideration of the record as a whole, the Court finds that the decision of the Commissioner is supported by substantial evidence.

Plaintiff was 45 years old at the time of the hearing.  (Tr. 191)  He completed the ninth grade in school.[2]  Id.  He has past relevant work as a sawmill operator and shoe plant laborer.  (Tr. 11,

---

[1] The Hon. Jimmy D. Puett.

[2] On two different forms, Plaintiff indicated that he completed the tenth grade.  (Tr. 64, 70)  It makes no difference; either would qualify as a "limited" education.  20 C.F.R. §§ 404.1564(b)(3), 416.964(b)(3) (2003).

72-74, 192, 194)

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process.  The first step involves a determination of whether the claimant is involved in substantial gainful activity.  20 C.F.R. § 404.1520(b) (2003).  If the claimant is, benefits are denied, regardless of medical condition, age, education or work experience.  Id.

Step 2 involves a determination, based solely on the medical evidence, of whether the claimant has an impairment or combination of impairments which significantly limits claimant's ability to perform basic work activities, a "severe" impairment.  Id., § 404.1520(c).  If not, benefits are denied.  Id.

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling.  Id., § 404.1520(d).  If so, and the duration requirement is met, benefits are awarded.  Id.

If claimant does not meet or equal a Listing, then a residual functional capacity assessment is made based on all the relevant medical and other evidence.  Id., § 404.1520(e).  This residual functional capacity assessment is utilized at Steps 4 and 5.  Id.

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform the physical and mental demands of past relevant work.  Id., § 404.1520(f).  If so, benefits are denied.  Id.

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience.  Id., § 404.1520(g).  If so, benefits are denied; if not, benefits are awarded.  Id.

The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 19) He found that Plaintiff had "severe" impairments, but that he did not have an impairment or combination of impairments that met or equaled a Listing. Id. He judged that Plaintiff's allegations regarding his limitations were not totally credible. Id.

The ALJ found that Plaintiff retained the residual functional capacity for a significant range of sedentary work. (Tr. 18) He determined that Plaintiff was therefore unable to perform any of his past relevant work. (Tr. 19) He correctly noted that, once Plaintiff was determined to be unable to perform his past relevant work, the burden shifted to the Commissioner to show a significant number of jobs within the economy that he could perform, given his residual functional capacity, age, education and past work. (Tr. 18)

Based on the testimony of a vocational expert witness in response to a hypothetical question, the ALJ found that there were a significant number of jobs in the economy which Plaintiff could perform, notwithstanding his limitations, for example, sedentary and unskilled cashier or assembler. Id. Consequently, the ALJ concluded that Plaintiff was not disabled. (Tr. 20)

Plaintiff contends that the ALJ failed to fully and fairly

5

develop the record in regard to his residual functional capacity. (Br. 11-15)  He also argues that the residual functional capacity determination was error.  (Br. 18-22)  On May 22, 2003, Plaintiff underwent a general physical examination by Joseph Farmer, M.D.  (Tr. 109-15)  Dr. Farmer noted that Plaintiff had been involved in a motor vehicle accident years before which resulted in the amputation of his right leg.  (Tr. 109)  He had a prosthetic right leg and had repeated infections of the stump.  Id.  Plaintiff's range of motion was full and normal in the spine and remaining extremities.  (Tr. 112)  There was no muscle atrophy or weakness and no sensory abnormalities; he walked with a limp.  (Tr. 113)  He was not limited in his ability to sit, lift, carry, handle, finger, hear or speak; he was limited in his ability to walk and stand.  (Tr. 115)

On October 10, 2003, Owen Kelly, M.D., performed a revision of the amputation.  He saw Plaintiff two weeks later.  (Tr. 147) Plaintiff was doing well; Dr. Kelly gave him a new prescription for a prosthesis.  Id.  On December 4, 2003, Plaintiff continued to do well.  (Tr. 146)  Dr. Kelly advised that he needed to be fitted for his prosthesis; he could return as necessary.  Id.  Plaintiff contends that the revision of the amputation prevented any further use of a prosthetic device.  (Br. 13)  As can be seen from Dr. Kelly's postoperative notes, that is clearly not the case.  Dr. Kelly not only prescribed a prosthesis, he encouraged Plaintiff to be fitted for it.

Plaintiff also contends that the ALJ rejected the opinion of Dr.

6

Kelly that Plaintiff was permanently disabled, as enunciated on a handicapped driving form.  (Br. 14)  A fair reading of the ALJ's opinion reflects that the only part of Dr. Kelly's opinion that the ALJ did not adopt was the part that stated he was permanently disabled on a Certification Form for Issuance of a Special License Plate or Certificate for the Disabled. (Tr. 148)  The ALJ noted that the opinion on that form was inconsistent with Dr. Kelly's objective findings.  (Tr. 16)  In addition, it is obvious that what the State of Arkansas means by "disabled" for the purposes of obtaining special parking is not "disability" according to the Social Security statute defining disability.  For instance, the form defines "disabled" in several ways, one of which is the inability to walk without the use of a prosthetic device.  (Tr. 148)

Plaintiff suggests that the ALJ should have sent him for another orthopaedic examination or obtained additional evidence from his treating orthopaedist.  The Eighth Circuit has provided guidance on this issue and clarified the ALJ's duty:

> This court has considered and rejected Howard's argument that additional medical evidence must be produced at step 5.  Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir.1995).  In Anderson we noted that
>
>> [i]t was the ALJ's responsibility to determine Anderson's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and Anderson's own description of her limitations. 20 C.F.R. §§ 404.1545-46, 416.945-46.  We must determine whether the record presents medical evidence of Anderson's RFC at the time of the hearing. Frankl v. Shalala, 47 F.3d 935, 937-38 (8th Cir.1995). If there is no

7

> such evidence, the ALJ's decision "cannot be said to be supported by substantial evidence." <u>Id.</u>
>
> The need for medical evidence, however, does not require the Secretary to produce additional evidence not already within the record. "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." <u>Naber v. Shalala</u>, 22 F.3d 186, 189 (8th Cir.1994).
>
> <u>Id.</u> Since there was already sufficient medical evidence in the record to support the ALJ's decision, the Commissioner was not required to produce additional medical evidence at step 5.

<u>Howard v. Massanari</u>, 255 F.3d 577, 581 (8th Cir. 2001).

There was clearly sufficient evidence in the record upon which the ALJ could rely in reaching his residual functional capacity determination.  Plaintiff's argument seeks to place the burden of proof on the Commissioner.  It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's residual functional capacity.  <u>Masterson v. Barnhart</u>, 383 F.3d 731, 737 (8th Cir. 2004); <u>Baldwin v. Barnhart</u>, 349 F.3d 549, 556 (8th Cir. 2003); <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1217 (8th Cir. 2001); <u>Young v. Apfel</u>, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); <u>Anderson v. Shalala</u>, 51 F.3d 777, 779 (8th Cir. 1995).

Next, Plaintiff argues that the ALJ's Step 3 determination was in error because he did not discuss his determination and because he did not find that Plaintiff met either Listing 1.03 or 1.05B.  (Br. 15-18)  That argument lacks merit.

Although it is preferable that ALJs address a specific

listing, failure to do so is not reversible error if the record supports the overall conclusion, as it does in this case. See Dunahoo v. Apfel, 241 F.3d 1033, 1037 (8th Cir.2001) (holding a failure to explain why the claimant did not meet the listing for rheumatoid arthritis was not an error); Briggs v. Callahan, 139 F.3d 606, 609 (8th Cir.1998) (stating that "although the ALJ did not specifically discuss [the] condition in the context of listing 112.05(D)," the record supported the conclusion).

Pepper o/b/o Gardner, 342 F.3d 853, 855 (8th Cir. 2003).

Listing 1.03 reads as follows:

> 1.03 *Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint*, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2003).

Plaintiff did not have reconstructive surgery or surgical arthrodesis[3] of a major weight-bearing joint. Therefore, he clearly did not meet Listing 1.03.

Listing 1.05, in pertinent part, reads as follows:

> 1.05 *Amputation (due to any cause).*
> . . .
>
> B. One or both lower extremities at or above the tarsal region, with stump complications resulting in medical inability to use a prosthetic device to ambulate effectively, as defined in 1.00B2b, which have lasted or are expected to last for at least 12 months;
>
> . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2003).

As noted earlier, Plaintiff did not have an inability to use a

---

[3]The stiffening of a joint by operative means. PDR Medical Dictionary 149 (2d ed. 2000).

prosthetic device to ambulate effectively.  Although Dr. Kelly prescribed a new prosthetic device and later urged him to get it fitted, he did not.  It appears that Plaintiff instead opted to pursue Disability Insurance benefits.  (Tr. 146)

Plaintiff did not meet Listing 1.05B for another reason.  He did not meet his burden of demonstrating an inability to ambulate effectively, as defined in the Listing:

> *b. What We Mean by Inability to Ambulate Effectively*
>     (1) *Definition.* Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
>     (2) *To ambulate effectively,* individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00 (2003).

> *J. Orthotic, Prosthetic, or Assistive Devices*
>     1. *General.* Consistent with clinical practice, individuals with musculoskeletal impairments may be

>examined with and without the use of any orthotic, prosthetic, or assistive devices as explained in this section.
>. . . .
>   3. *Prosthetic devices.* Examination should be with the prosthetic device in place. In amputations involving a lower extremity or extremities, it is unnecessary to evaluate the individual's ability to walk without the prosthesis in place. However, the individual's medical ability to use a prosthesis to ambulate effectively, as defined in 1.00B2b, should be evaluated. The condition of the stump should be evaluated without the prosthesis in place.
>. . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00 (2003).

Plaintiff has the burden of showing that he met a Listing. Pyland v. Apfel, 149 F.3d 873, 877 (8th Cir. 1998). He failed to meet that burden.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. E.g., Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996); Pratt v. Sullivan, 956 F.2d 830, 833 (8th Cir. 1992).

There is ample evidence in the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. Richardson v. Perales, 402 U.S. at 401; see also Reutter v. Barnhart, 372 F.3d 946, 950 (8th Cir. 2004). The Commissioner's decision is not based on legal error.

THEREFORE, the Court hereby affirms the final determination of

the Commissioner and dismisses Plaintiff's complaint with prejudice.

IT IS SO ORDERED.

DATED this 19th day of September, 2006.

_Henry L. Jones, Jr._
UNITED STATES MAGISTRATE JUDGE